J. E. ROBESON, PLAINTIFF IN ERROR, VS. THE FIRST NATIONAL BANK OF ORLANDO, A CORPORATION, DEFENDANT IN ERROR.

1. Equitable pleas filed in actions at law are properly stricken out on motion where the matters therein alleged present no equitable defence and are available by pleas at law.
2. Evidence examined, and found insufficient to support the verdict.

Writ of error to the Circuit Court for Orange county.

The facts in the case are stated in the opinion of the court.

*Jones & Jones*, for Plaintiff in Error.

*Beggs & Palmer*, for Defendant in Error.

CARTER, J.:

From the abstract of record, to which no exceptions were filed by defendant in error, and upon which alone the case must be disposed of, we extract the following statement of the facts: On November 14, 1894, the bank sued Robeson upon a written obligation dated March 24, 1893, whereby Robeson promised to pay to the order of the bank $990 three months after date, with interest at 10 per cent. per annum after maturity. The pleadings are somewhat confused, but the issues submitted to the jury were framed upon pleas of payment, set-off and usury, the latter plea alleging that the note included $30 for three months interest on $960. According to the evidence as abstracted it apears that on March 24, 1893, Robeson owed the bank $960, evidenced by two notes, and on that day he executed the obligation sued upon which included $30 above the amount of the debt as interest for three months' forbearance. Defendant deposited with the bank as collateral thirty shares of stock in a certain corporation, with power of attorney to sell same to pay the note. Defendant being a customer of the bank, also deposited with it for safekeeping

but with no power to sell, ninety other shares of the same stock. W. R. Anno had for years been acting as agent and attorney for the bank, and its president had several times previously consulted him in regard to Robeson's indebtedness, and in prior transactions between Robeson and the bank Anno had represented the bank. On April 6, 1893, Anno informed the bank that one Smith desired to purchase twenty shares of Robeson's stock, not of that left as collateral, but of that this was a chance to get his money out of Robeson. Anno and the president thereupon settled between themselves the terms of sale of twenty shares of Robeson's stock, not of that   left as collateral,  but of that left with the bank for safekeeping, and the bank delivered the shares of stock to Anno to sell to Smith. On the same day Anno sent Robeson the twenty shares of stock by Smith in order that Robeson might make a formal transfer, with a letter notifying him of the sale and informing him that the terms of sale were as follows: Cash $333.33 and Smith's two notes for $333.33 each, due in three and six months, payable to the bank, and that the bank was to take the proceeds of sale for Robeson's indebtedness and surrender his note, and the president of the bank was fully cognizant of the contents of this letter. Robeson supposing that the stock was a part of the collateral, accepted the proposition of sale, transferred the stock to Smith and sent by Smith the two notes payable to the bank, and Smith's check for $333.33, which he also supposed was payable to the bank, but which in fact was payable to Anno. On April 21, 1893, Anno deposited the two Smith notes in the bank with instructions to credit Robeson's note and at the same time deposited Smith's check to his own ac-

count.    Next day the president of the bank told Anno that he saw the latter had the Robeson money, and requested Anno to pay it to him, saying Robeson's note was not due and when it was he would protect it. Anno drew his check in favor of the president for $300 on this fund, payable to the president individually.    Anno retained the balanuce of the cash payment, claiming it as commissions.    There is some little conflict as to who Anno represented in the sale of the stock.    He states that as between Robeson and the bank he represented the bank, but as between Robeson and Smith he represented Robeson. Defendant denied that Anno was his agent, and claimed that he was agent for the bank.    The president of the bank stated that Anno represented all parties. Sometime after this transaction the bank failed and the receiver notified Robeson that he had an unpaid note in the bank.  Robeson claimed that the note had been paid by the sale of the stock above detailed. The Smith notes had not then been paid, but the receiver afterwards collected them and entered credit therefor on the note in suit. Robeson had not authorized Anno to sell any of his stock, and knew nothing of negotiations with Smith until he received the letter from Anno.    It seems that the bank declined to recognize the cash payment made to Anno by Smith, or the payment made by Anno to its president, claiming that the latter was a personal loan for which the bank was not responsible. The jury found for plaintiff, assessed the damages as $305.33, and after overruling defendant's motion for a new trial judgment was entered upon the verdict, from which this writ of error was taken.

1. The defendant filed a plea upon equitable grounds which upon motion was stricken, and this rul-

ing is assigned as error. The plea contained no equitable defence. The matters set forth therein were available by pleas at law. There was, therefore, no error in striking it out.

2. The only other assignment which we consider it necessary to notice is that relating to the motion for a new trial. It is insisted that the verdict was contrary to the evidence, and it certainly is clearly contrary to the evidence as we find it stated in the abstract of record. Under the terms of the sale of defendant's stock as agreed upon by Anno and the bank, and ratified by the defendant, the proceeds of the sale, *viz*: the two notes and the cash payment, were to be taken by the bank in settlement of the note sued upon. The notes were delivered to the bank and afterwards paid, and the cash payment was made by check to the bank's agent Anno, and he afterwards paid $300 of the amount over to the president of the bank. If the $30 usurious interest be deducted from the note sued on, these sums paid to the bank and its president are entirely sufficient to liquidate the amount due upon the note. We think the evidence as we have stated it shows clearly that Anno was acting as agent for the bank; indeed, there is no evidence in the abstract showing that he was not. The money was paid to him as the bank's agent under an agreement that defendant's note should be surrendered, and he actually turned over to the bank the two Smith notes and paid the president $300 of the cash payment.

The judgment will be reversed and a new trial granted.